IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TSYS MERCHANT SOLUTIONS, LLC,

        Plaintiff

vs.                                      Case No. 16-4024-SAC

PIPELINE PRODUCTIONS, INC.,
PIPELINE TICKETING, LLC, and
NATHAN PRENGER,

        Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the plaintiff's motion to enforce settlement agreement. (Dk. 15). Counsel has recently entered an appearance on behalf of all defendants and filed a joint memorandum opposing the motion. (Dk. 20). With receipt of the plaintiff's reply (Dk. 21), the court rules as follows.

As background, the plaintiff TSYS Merchant Solutions, LLC ("TSYS") filed this action on March 14, 2016, alleging that it provided credit card processing services to the defendants pursuant to a Merchant Transaction Processing Agreement ("contract"). On its face, the contract shows Pipeline Ticketing, LLC ("LLC") contracting as the merchant and Nathan Prenger signing on behalf of the LLC and also signing as personal guarantor. (Dk. 1-1). The complaint alleges that by the terms of this contract, TSYS processed chargebacks totaling $87,340.82 for the

defendants from July 15, 2015, until this action was filed, and that the defendants have failed to indemnify or reimburse TSYS for these chargebacks. TSYS brings this action seeking to recover the chargebacks, fees, prejudgment interest and attorney's fees under the legal theories of breach of contract, unjust enrichment, and "money had and received." (Dk. 1).

The Magistrate Judge issued on July 1, 2016, a notice and order to the plaintiff and its attorney to show cause in writing to this court why the defendants, Pipeline Productions, Inc. and Pipeline Ticketing, LLC ("pipeline defendants") should not be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). (Dk. 7). The Magistrate Judge's order indicated the two defendants were properly served and had failed to answer the plaintiff's complaint with the April deadline passing. The plaintiff responded that the parties had "reached an agreement in principal and are working on finalizing and executing the settlement documents" with a resolution expected "in the immediate future." (Dk. 8, p. 1). Accepting this response, the court gave the plaintiff until August 15, 2016, either to submit the proper dismissal papers pursuant to their settlement or to show cause in writing why this court should not otherwise proceed with dismissal due to the plaintiff's failure to prosecute this case in accordance with the rules of this court.

On August 2, 2016, the plaintiff's counsel filed a document that is dated July 10, 2015, and is entitled "Settlement Agreement and Release."

2

The document purports to be a signed settlement agreement between TSYS and "Pipeline Ticketing, LLC only," and it bears the caption of this case. (Dk. 12, p. 1). In pertinent part, the agreement provides:

> 1. **Settlement of Claims**. The Parties agree that Plaintiff shall be entitled to a Judgment in the amount of $97,609.80, against Defendant Pipeline Ticketing, LLC. Said Judgment can be satisfied if by August 1, 2015, Pipeline pays Plaintiff $95,000.00, which waives contractually due interest, penalties, and/or fees known to-date. Plaintiff agrees to stay execution of said Judgment until August 1, 2016. However, if anymore "chargebacks" are processed by TSYS on behalf of Pipeline customers, Pipeline agrees to be responsible for said chargebacks.
> . . . .
> 10. **Voluntary Agreement**. The Parties represent and warrant that, prior to signing below, each has had the opportunity to consult with legal counsel of its choice, has had a full opportunity to conduct discovery and investigate all claims and defenses, has read this document in its entirety and fully or satisfactorily understands its content and effect, and that it has not been subject to any form of duress in connection with this settlement, is completely satisfied with the settlement reflected in this agreement, and accordingly agrees to be bound as described in this agreement. This Agreement was drafted jointly by all parties in consultation with their attorneys. Accordingly, no rule of construction based upon one party or the other drafting this Agreement shall apply.
> 11. **Final Agreement**. This Agreement represents the final agreement between the Parties. No oral representations or understandings concerning the subject matter have or shall operate to amend, supersede, or replace any of the terms or conditions set forth herein.

(Dk. 12, p. 1-3). The settlement agreement is signed by Brett Mosiman in his capacity as partner in Pipeline Ticketing, LLC. *Id.* at 3. The plaintiff's motion states that the LLC has not made any payments in satisfaction of the agreement and "has become largely unresponsive" to the plaintiff. (Dk. 16, p. 2). Citing case law that favors enforcement of written settlement

3

agreements, the plaintiff advocates for enforcement of the agreement according to its plain terms. Specifically, the plaintiff asks the court to enforce the agreement by entering "Judgment in its favor against Defendant Pipeline Ticketing, LLC in the amount of $97,609.80 and for any other relief that the Court deems just and equitable." (Dk. 16, p. 3).

The defendants jointly respond that because Mr. Mosiman is not an attorney, he cannot represent Pipeline Ticketing, LLC in this litigation, and, the "settlement is unenforceable," because Mr. Mosiman "had no authority to settle the claims in this suit." (Dk. 20, p. 1, 3). The defendants, however, cite no authority for the proposition that a partner owning a majority interest in the LLC lacks authority to sign a settlement agreement concerning matters pending in court. Without affidavits or declarations, the defendants argue Mr. Mosiman acted in bad faith in entering the settlement agreement. The joint memorandum asserts that Mr. Mosiman owns 70% of the Pipeline defendants and that the defendant Nathan Prenger owns 30% of the Pipeline defendants. Mr. Mosiman and Mr. Prenger apparently do not agree on the management and operation of the Pipeline defendants. The joint memorandum represents that Mr. Mosiman has denied Mr. Prenger access to the Pipeline defendants' financial records and that Mr. Mosiman has told the defendants' counsel he would not retain counsel and would not protect the Pipeline defendants' interests. (Dk. 20, p. 3). The joint memorandum alleges that Mr. Mosiman executed the settlement agreement

4

without making "any inquiry" into what supported the complaint and that Mr. Mosiman is "intentionally and recklessly running the Pipeline defendants into the ground with complete disregard for his actions." *Id.* at pp. 3-4. Thus, the defendants take the position that Mr. Mosiman "clearly acted in bad faith" in entering into this settlement agreement and that the court should not grant the plaintiff's motion to enforce it. *Id.* at 4.

In reply, the plaintiff points out the defendants' current counsel in July of 2016 initially entered his appearance only for Nathan Prenger and filed an answer only for Prenger. (Dks. 9 and 10). After the settlement agreement (Dk. 12), the application for clerk's entry of default against Pipeline Productions, Inc. (Dk. 13), and the motion to enforce settlement agreement (Dk. 15) were filed by the plaintiff, Prenger's counsel then entered his appearance on behalf of the Pipeline defendants too. The plaintiff suggests there is some uncertainty as to what authority the Pipeline defendants have conferred on this counsel. The plaintiff disputes the defendants' use of the general rule that an LLC cannot be represented in judicial proceedings by one of its owners to argue that Mr. Mosiman lacks the authority as majority owner to sign a settlement agreement on behalf of the LLC. The plaintiff asks the court to take judicial notice from the Kansas Secretary of State's website that Mr. Mosiman is the "organizer, member, and registered agent for Pipeline Ticketing, LLC." (Dk. 21, p. 2). The plaintiff denies that Mr. Mosiman lacked authority to sign the settlement agreement

5

and that Mr. Mosiman was actually representing Pipeline Ticketing in a judicial proceeding when he signed that settlement agreement. The plaintiff questions how Mr. Mosiman could have acted in bad faith in agreeing to pay TSYS for funds representing monies received for unfulfilled orders, that is, these are monies that the LLC received from its customers but then failed to provide any goods or services so TSYS reimbursed the LLC's customers. As for the defendant's allegations that Mr. Mosiman failed to make any inquiry prior to settlement, the plaintiff points out that the defendants' counsel had no involvement in the settlement negotiations and any such comments have no basis in fact. Finally, the plaintiff takes note that the defendants' filing is unsupported by any sworn statements undermining Mr. Mosiman's authority to sign a settlement agreement or substantiating any viable allegation of bad faith.

The law governing a motion to enforce settlement agreement is familiar to the court:

> In a case pending before it, a trial court may "summarily enforce a settlement agreement" reached by the parties. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Because a settlement agreement is a contract, "[i]ssues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). The existence of an agreement is a question of fact, *Reznik v. McKee*, 216 Kan. 659, 671–72, 534 P.2d 243, 254 (1975), and an evidentiary hearing is necessary when the parties raise material factual disputes over whether an agreement has been reached and what the terms of the agreement are. *See United States v. Hardage*, 982 F.2d at 1496. Settlement agreements enjoy a favored status in Kansas, as recognized by its Supreme Court:

> It is an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. However, as an exception to the rule, it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties.
>
> *Krantz v. University of Kansas*, 271 Kan. 234, 241–242, 21 P.3d 561, 567 (2001). A court will not inquire into the merits of the underlying suit after a valid settlement absent fraud or bad faith. *Lewis v. Gilbert*, 14 Kan.App.2d 201, 202, 785 P.2d 1367 (1990). That some party changes his or her mind about the settlement terms does not amount to allegations of fraud or bad faith. *Id*. at 203, 785 P.2d 1367; *see Woods v. Denver Dept. of Revenue, Treasury Div.*, 45 F.3d 377, 378 (10th Cir.1995) ("Ordinarily, a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind." (citation omitted)).

*Earthmovers, Inc. v. Massey*, 07-4134-SAC, 2008 WL 1924938, at *1–2 (D. Kan. Apr. 30, 2008).

The defendants challenge the enforceability of the settlement agreement based only on the argument that Mr. Mosiman has no legal authority to represent Pipeline Tracking LLC in this litigation. The defendants rely upon the cited, "long-time Kansas rule has been that a corporation may not appear in court by an agent who is not an attorney." *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 503, 14 P.3d 1149 (2000) (citations omitted). In a case where a non-attorney filed the notice of appeal for a limited liability party, the Tenth Circuit observed that, "[a]s a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se." *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th

7

Cir. 2001). The court upheld the notice of appeal and recognized the distinction followed by other courts between the ministerial act of filing a notice and the "ongoing legal representation" involved in filing motions or pleadings. *Id.* at 557. As the majority owner of Pipeline Ticketing, LLC, Mr. Mosiman appears to have negotiated and then signed the settlement agreement. Mr. Mosiman has not filed any motion or pleading, nor did he file the settlement agreement.

If the court were to follow the defendants' position, then a LLC could not lawfully settle a case before entering its appearance in a case unless it had an attorney representing it in the negotiations and settlement. The court knows of no such rule. Indeed, the purpose of the rule does not encompass this circumstance:

> A limited liability company is an artificial entity created by law. "Thus, unlike a natural person, it generally cannot appear or act in a judicial proceeding in person, but must be represented by a licensed attorney." *Keller Corp. v. Kelley*, 187 P.3d 1133, 1136 (Colo. App. 2008). One of the public policy motivations for this and similar statutory provisions that regulate the practice of law is to prevent laying "open the gates to the practice of law for entry to those corporate officers or agents who have not been qualified to practice law and who are not amenable to the general discipline of the court." *Woodford Mfg. Co. v. A.O.Q., Inc.*, 772 P.2d 652, 653 (Colo. App. 1988) (quoting *Union Sav. Ass'n v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60, 262 N.E.2d 558, 561 (1970)). Such regulations are also meant to protect "citizens and litigants in the administration of justice, against the mistakes of the ignorant … and the machinations of [the] unscrupulous." *Bennie v. Triangle Ranch Co.*, 73 Colo. 586, 588, 216 P. 718, 719 (1923).

*Weston v. T & T, LLC*, 271 P.3d 552, 556–57 (Colo. App. 2011), *cert. denied*, 2012 WL 53796 (Colo. Jan. 9, 2012); *see also Babe Houser Motor*,

270 Kan. at 503 (The "efficient administration of justice" is promoted by requiring attorneys to act as agents for corporations in court). In short, Mr. Mosiman did not appear in court on behalf of the LLC and his actions in negotiating and signing the settlement agreement were not done in a judicial proceeding. Thus, the defendants are unable to bring Mr. Mosiman's conduct within the scope of this general rule.

The defendants lodge no other argument against Mr. Mosiman's authority as a majority owner of the LLC to negotiate and settle this dispute. Nor do the defendants allege any circumstances giving rise to any material questions of fact over Mr. Mosiman's authority to enter into this settlement agreement on behalf of the LLC. There appear to be no issues concerning the formation or construction of the settlement agreement, and no dispute over any of its terms.

The defendants' remaining argument is bad faith on the part of Mr. Mosiman who is the partner who signed the settlement agreement on behalf of the LLC. What the defendants allege as bad faith are not actions taking place between the contracting parties. Rather, the defendants' memorandum asserts bad faith as to Mr. Mosiman's duties owed to other members of the LLC. In sum, the defendants allege Mr. Mosiman individually acted in bad faith in entering the settlement agreement to the detriment of the LLC's interests and the other owner. The defendants cite no legal authority to support this as a cognizable allegation of bad faith. The

defendants present no arguments or facts showing that this written settlement agreement is tainted or voidable based on misrepresentations, bad faith, collusion, or unlawful inducement against a party to the contract. Mr. Mosiman's duties toward other interest owners in the LLC are not a matter to be resolved here, as there is no dispute over his general legal authority as majority owner to contract on behalf of the LLC.

As for the allegation that Mr. Mosiman did not investigate the case before entering into the settlement agreement, this circumstance does not undermine enforceability. The Kansas Supreme Court has followed this general rule:

> "Since the parties assume the risk of mistake as to matters intended to be resolved by the compromise, a compromise and settlement is not defective merely because the parties were ignorant or mistaken as to the full extent of their rights. In order for a mistake to have legal significance and to constitute a basis for invalidating a compromise, it must be based upon the parties' unconscious ignorance; it must not relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest. A person who enters into a compromise, consciously ignorant of a fact but meaning to waive all inquiry into it, is not mistaken, in the legal sense; in such a situation it is the intention of the parties to accept the consequences of uncertainty."

*In re Estate of Thompson*, 226 Kan. 437, 441, 601 P.2d 1105, 1108-09 (1979) (quoting 15A Am.Jur.2d, Compromise and Settlement § 33, p. 806 (1976)). Thus, the allegation that Mr. Mosiman agreed to settle without conducting an inquiry amounts to an intentional waiver in favor of a settlement and is not a basis for invalidating the settlement.

Even if the defendants had a cognizable claim of bad faith, they have not come forward with any evidence in support of their position. They do not ask the court for an evidentiary hearing or any other opportunity to substantiate their allegations of bad faith. They simply ask the court to deny the plaintiff's motion on the force of their arguments. "No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." *Sump v. Pamida, Inc.*, 1998 WL 1054949, at *1 (D. Kan. Nov. 25, 1998) (quoting *Johnson v. Hanes Hosiery*, 57 F.3d 1069, 1995 WL 329453, at *1 (6th Cir. Jun. 1, 1995)). As discussed above, the defendants' arguments are without any cognizable legal force under the circumstances advanced here and are unsupported by proper evidentiary filings.

IT IS THEREFORE ORDERED THAT  the plaintiff's motion to enforce the settlement agreement (Dk. 15) is granted with the plaintiff TSYS Merchant Solutions, LLC entitled to judgment in its favor and against Pipeline Ticketing, LLC in the amount of $97,609.80 according to the terms of the written settlement agreement. The filing of this judgment pursuant to Fed. R. Civ. P. 58 must await final disposition of the case absent a sufficient request for an earlier entry.

Dated this 8th day of September, 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge